Rafey S. Balabanian (SBN - 315962)
rbalabanian@edelson.com
Eve-Lynn Rapp (admitted *pro hac vice*)
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, CA 94107
Telephone: (415) 212-9300
Facsimile: (415) 373-9435

Gordon M. Fauth, Jr. (SBN 190280)
gfauth@finkelsteinthompson.com
Of Counsel to
FINKELSTEIN THOMPSON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 398-8700
Direct: (510) 238-9610
Facsimile: (415) 398-8704

Timothy N. Mathews (*pro hac vice* pending)
TNM@chimicles.com
Catherine Pratsinakis (*pro hac vice* pending)
CP@chimicles.com
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: (610) 642-8500
Fax: (610) 649-3633

[Additional counsel listed on signature page]
*Counsel for Plaintiffs and the Settlement Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE 24 HOUR FITNESS PREPAID MEMBERSHIPS LITIGATION | CASE NO. 4:16-cv-01668<br><br>CONSOLIDATED CASES:<br>  No. 3:16-cv-01668-JSW<br>  No. 3:16-cv-02359-JSW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**<br><br>Judge:      Jeffrey S. White<br>Date:       December 8, 2017<br>Time:       9:00 A.M.<br>Courtroom: 5, 2nd Floor |

1

### NOTICE OF MOTION

2    **PLEASE TAKE NOTICE** that on December 8, 2017 at 9:00 a.m., or at such other time as

3    may be set by the Court, Plaintiffs Kevin O'Shea, Mark Vitcov, Rod Morris, Michael Losquadro,

4    Dipti Shah, and Russell Marchewka will appear, through counsel, before the Honorable Jeffrey S.

5    White, or any Judge sitting in his stead, in Courtroom 5, 2nd Floor, 1301 Clay Street, Oakland,

6    California 94612, and then and there, respectfully move the Court, pursuant to Federal Rule of

7    Civil Procedure 23(e), to grant preliminary approval of the proposed class action settlement

8    reached between themselves and Defendant 24 Hour Fitness USA, Inc.

9    Plaintiffs' motion is based upon this Notice, the Memorandum of Points and Authorities

10   filed herewith, the exhibits attached thereto, including the Parties' proposed class action settlement

11   agreement, the Declaration of Rafey S. Balabanian filed simultaneously herewith, and the record

12   in this matter, along with any oral argument that may be presented to the Court and evidence

13   submitted in connection therewith.

14                                            Respectfully Submitted,

15                                            **KEVIN O'SHEA, MARK VITCOV, ROD**
                                              **MORRIS, MICHAEL LOSQUADRO, DIPTI**
16                                            **SHAH, AND RUSSELL MARCHEWKA,**
                                              individually and on behalf of all others similarly
17                                            situated,

18   Dated: November 1, 2017                  By:  /s/  Rafey S. Balabanian

19                                            Rafey S. Balabanian (SBN - 315962)
                                              rbalabanian@edelson.com
20                                            Eve-Lynn Rapp  (admitted *pro hac vice*)
                                              erapp@edelson.com
21                                            EDELSON PC
                                              123 Townsend Street, Suite 100
22                                            San Francisco, CA 94107
                                              Tel: 415.212.9300
23                                            Fax: 415.373.9435

24                                            Douglas Thompson, Jr. (admitted *pro hac vice*)
                                              dthompson@finkelsteinthompson.com
25                                            FINKELSTEIN THOMPSON LLP
                                              James Place
26                                            1077 30th Street, N.W., Suite 150
                                              Washington, DC 20007
27                                            Tel: 202.337.8000
                                              Fax: 202.337.8090

28

Gordon M. Fauth, Jr. (SBN 190280)
gfauth@finkelsteinthompson.com
Of Counsel to
FINKELSTEIN THOMPSON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: 415.398.8700
Fax: 415.398.8704

Timothy N. Mathews (*pro hac vice* pending)
TNM@chimicles.com
Catherine Pratsinakis (*pro hac vice* pending)
CP@chimicles.com
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: 610.642.8500
Fax: 610.649.3633

Kristen L. Sagafi (SBN- 222249)
ksagafi@tzlegal.com
TYCKO & ZAVAREEI LLP
483 Ninth Street – Suite 200
Oakland, CA 94607
Tel: (510) 254-6810

## SUMMARY OF ARGUMENT

The Court should grant Plaintiffs' motion for preliminary approval of the class action settlement reached between Plaintiffs and Defendant 24 Hour Fitness.

The Court must engage in a two-part inquiry to determine whether preliminary approval is appropriate.  The first part of the analysis concerns certification of the proposed settlement class. The proposed class must meet the requirements of Rule 23(a) and at least one subsection of Rule 24(b). *See also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997). The second part requires the Court to determine whether the proposed settlement warrants preliminary approval and notice to the proposed class. The preliminary approval hearing is a pre-notification hearing meant to ensure that the settlement is not "unacceptable at the outset." Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.25 at 3839 (4th ed. 2002).

The proposed class is appropriate for certification for settlement purposes because it meets the requirements of both Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and Rule 23(b)(3) (predominance and superiority). *See also Amchem*, 521 U.S. at 614, 621. Indeed, the class numbers approximately 255,000 individuals, they share several common questions of fact and law, and each Plaintiff's experience and the injury they suffered were materially the same as the absent class members.   And, Plaintiffs are suitable class representatives, and their counsel satisfy the criteria of Rule 23(g), since they have shown themselves to "fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B). In short, certification of the Settlement Class is appropriate.

The proposed Settlement undoubtedly merits preliminary approval. Indeed, the Settlement satisfies the criteria outlined in *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007), in that it: 1) was reached after serious, informed non-collusive negotiations, 2) has no obvious deficiencies and provides class members with real, immediate relief, 3) does not provide preferential treatment to any individual class member, and 4) easily falls within the courts' range of possible approval.

Finally, the proposed notice plan meets the requirements of due process and Rule 23(c) because it provides "individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and is the best practicable under the circumstances.

Accordingly, the Court should grant Plaintiffs' motion, certifying the Settlement Class for settlement purposes, appointing Plaintiffs Kevin O'Shea, Mark Vitcov, Rod Morris, Michael Losquadro, Dipti Shah, and Russell Marchewka as class representatives, appointing Rafey Balabanian and Eve Lynn-Rapp of Edelson PC, Gordon Fauth of Finkelstein Thompson LLP, Timothy Mathews and Catherine Pratsinakis of Chimicles & Tikellis LLP, and Kristen Sagafi of Tycko & Zavareei LLP as class counsel, and ordering that notice be disseminated to the Settlement Class.

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................... 1

II.     BACKGROUND ..................................................................................... 2

    A.      Plaintiff's Allegations ................................................................ 2

    B.      The Actions ................................................................................. 2

    C.      The Parties' Settlement Discussions .......................................... 3

III.    THE TERMS OF THE SETTLEMENT AGREEMENT ........................... 4

IV.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ................... 5

V.      PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ............ 9

VI.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ........ 11

VII.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ............... 14

VIII.   CONCLUSION ..................................................................................... 15

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................ 5, 7, 8, 9

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ................................................................................ 14

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S. Ct. 2179 (2011) ........................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................... 5, 6, 7

**United States Court of Appeals Cases**

*Ellis v. Costco Wholesale Corp.*,
    658 F.3d 970 (9th Cir. 2011) ................................................................. 6

*In re First All. Mortgage Co.*,
    471 F.3d 977 (9th Cir. 2006) ................................................................. 8

*In re Mego Fin. Corp. Secs. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................. 12

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................... 14

*Radcliffe v. Experian Info. Solutions Inc.*,
    715 F.3d 1157 (9th Cir. 2013) ............................................................... 13

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ................................................................. 7

*Wolin v. Jaguar Land Rover N. Am. LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................... 6, 9

**United States District Court Cases**

*Ambrosia v. Cogent Commun., Inc.*,
    312 F.R.D. 544 (N.D. Cal. 2016) .......................................................... 6

*Bickley v. Schneider Nat'l, Inc.*,
    08-CV-05806-JSW, 2016 WL 4157355 (N.D. Cal. April 25, 2016) .......... 13, 14

*Bloom, et al. v. American Home Products Corp., et al.*,
    98-cv-20047 (E.D. Pa.) .......................................................................... 10

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*,
    12-cv-05259-JST, 2013 WL 6145706 (N.D. Cal. Nov. 21, 2013) ................................... 11

*Chambers v. Whirlpool Corp.*,
    214 F. Supp. 3d 877 (C.D. Cal. 2016) ................................................................. 10

*Cordy v. USS-Posco Indus.*,
    12-cv-00553-JST, 2014 WL 212587 (N.D. Cal. Jan 17, 2014) ........................... 11, 13, 14

*Cotter v. Lyft, Inc.*,
    176 F.Supp 3d 930 (N.D. Cal. 2016) ................................................................. 13, 14

*Cox v. Clarus Marketing Grp.*,
    291 F.R.D. 473 (S.D. Cal. 2013) ................................................................. 13

*Dilts v. Penske Logistics, L.L.C.*,
    08-cv-0318-CAB, 2014 WL 12515159 (S.D. Cal. July 11, 2014) ................................... 14

*Friedman v. 24 Hour USA, Inc.*,
    06-cv-06282 AHM (C.D. Cal. July 12, 2010) ................................................................. 12

*Fulford v. Logitech, Inc.*,
    08-cv-02041-MMC, 2010 WL 807448 (N.D. Cal. 2010) ................................................ 13

*Greenwood v. Compucredit Corp.*,
    08-cv-4878, 2010 WL 4807095 (N.D. Cal. Nov. 19, 2010) ........................................... 8

*Hahn v. Massage Envy Franchising LLC*,
    12-cv-00153-DMS, 2015 WL 2164981 (S.D. Cal. Mar. 6, 2015) ................................... 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................. 5, 6, 7

*Harris v. Vector Mktg. Corp.*,
    08-cv-5198, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ........................................... 11

*Hopwood v. Nuance*,
    13-cv-02132 (N.D. Cal. 2015) ................................................................. 10

*In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*,
    140 F.R.D. 425 (D. Ariz. 1992) ................................................................. 7, 8

*In re Apple iPhone/iPod Warranty Litig.*,
    10-cv-1610-RS (N.D. Cal.) ................................................................. 10

*In re High-Tech Employee Antitrust Litig.*,
    11-cv-2509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ........................................... 11

*In re LinkedIn User Privacy Litig.*,
    12-cv-03088 (N.D. Cal. 2012) ................................................................. 10

*In re Netflix Privacy Litig.*,
    11-cv-00379 (N.D. Cal. 2011) ......................................................................................... 10

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*,
    282 F.R.D. 486 (C.D. Cal. 2012) ...................................................................................... 9

*In re Relafen Antitrust Litig.*,
    01-cv-12239-WGY (D. Mass.)........................................................................................ 10

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007)..................................................................... 11, 12

*In re Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prod. Liab. Litig.*,
    2672-CRB, 2016 WL 4010049 (N.D. Cal. July 26, 2016)......................................... 10, 13

*Kagan v. Wachovia Sec.*,
    09-cv-5337 SC, 2012 WL 1109987 (N.D. Cal. Apr. 2, 2012) ........................................... 5

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008) ...................................................................................... 7

*Ma v. Covidien Holding, Inc.*,
    12-cv-02161, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ............................................. 14

*Makaeff v. Trump Univ., LLC*,
    10-cv-0940-GPC-WVG, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014) .............................. 8

*Marsh v. First Bank of Delaware*,
    11-cv-05226-WHO, 2014 WL 554553 (N.D. Cal. Feb. 7, 2014) ...................................... 6

*Martina v. LA Fitness Int'l, LLC*,
    12-cv-02063 WHW, 2013 WL 5567157 (D.N.J. Oct. 8, 2013) ....................................... 12

*McKnight v. Uber Techs., Inc.*,
    14-cv-05615-JST, 2017 WL 3427985 (N.D. Cal. Aug. 7, 2017)................................. 12, 13

*Moshogiannis v. Sec. Consultants Grp., Inc.*,
    10-cv-05971-EJD, 2012 WL 423860 (N.D. Cal. Feb. 8, 2012) .................................... 5, 11

*Rodman v. Safeway*,
    11-cv-3003-JST (N.D. Cal) ............................................................................................ 10

*Ruch v. AM Retail Grp., Inc.*,
    14-cv-05352-MEJ, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016)................................. 8, 9

*Silver et al. v. L.A. Fitness Int'l LLC.*,
    10-cv-002326-MMB (E.D. Pa. March 13, 2013) ........................................................... 12

*Vandervort v. Balboa Capital Corp.*,

8 F. Supp. 3d 1200 (C.D. Cal. 2014) .................................................................. 12

*Villegas v. J.P. Morgan Chase & Co.*,
   09-cv-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................................... 13, 14

**State Cases**

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) ....................................................................................... 8

*Marchewka v. 24 Hour Fitness USA, Inc.*,
   16-cv-02359-MEJ (N.D. Cal.) ............................................................................. 3

*McAdams v. Monier, Inc.*,
   182 Cal. App. 4th 174 (2010) ............................................................................... 8

*O'Shea, et al. v. 24 Hour Fitness USA, Inc.*,
   16-cv-1668-EDL (N.D. Cal.) ................................................................................ 2

**Statutory Provisions**

28 U.S.C. § 1715 ................................................................................................. 15

Fed. R. Civ. P. 23 ...........................................................................................*passim*

**Other Authorities**

Herbert Newberg & Alba Conte, Newberg on Class Actions,
   § 11 (4th ed. 2002) ...................................................................................... 11, 14

Manual for Complex Litigation (Second),
   § 30.44 (1985) ............................................................................................... 11

Manual for Complex Litigation (Fourth),
   § 21.633 (2004) ................................................................................................ 5

## I.      **INTRODUCTION**

Plaintiffs Kevin O'Shea, Mark Vitcov, Rod Morris, Michael Losquadro, Dipti Shah, and Russell Marchewka, in their individual and representative capacities, (collectively, "Plaintiffs") seek preliminary approval of a class action settlement that, if approved, will resolve the instant lawsuit and a related state court action against Defendant 24 Hour Fitness USA, Inc. ("Defendant" or "24 Hour Fitness").[1] Broadly speaking, Plaintiffs allege that 24 Hour Fitness carried out a fraudulent and misleading sales campaign related to prepaid memberships, by orally promising consumers a fixed annual renewal amount, and then years later raising amounts.  Defendant denies that it engaged in any wrongdoing and contends that it was forthright about its membership terms, which were written in each membership agreement. After motion practice, formal and informal discovery, two private mediation sessions with the well-respected neutral, John B. Bates, Esq. of JAMS in San Francisco, and lengthy direct negotiations, the parties have reached a full-relief settlement.

The Settlement is the product of a great deal of hard and creative work put forth by the parties and it is an incredibly strong result for the class. First, class members who submit a claim form and declaration will receive a *full refund* of the increases in the annual renewal amount they have already paid, and their future annual renewal amounts will revert back to their initial annual renewal amount, which will be locked for so long as they timely pay and remain members in good standing. The claim form is simple and straightforward, merely requiring class members to attest to the fact that, at the time they signed-up for the membership, they were told that the initial annual renewal amount was guaranteed for life. In other words, class members who attest that they were told the renewal amount was fixed for life will receive *full relief* under the Settlement.

---

[1]    A copy of the proposed class action settlement agreement ("Settlement") is attached as Exhibit A to the Declaration of Rafey S. Balabanian, dated November 1, 2017, filed simultaneously herewith ("RB Decl."). Defendant also reached a settlement with the District Attorneys for the California Counties of Orange and Contra Costa (the "Counties"). However, the framework and relief included in this Settlement were negotiated by Class Counsel, independent of the Counties. In fact, Defendant did not disclose the potential settlement with the Counties until August 30, 2017, *after* nearly every term had been negotiated and the Agreement was near final.

Second, even those class members who do not file a claim will be automatically entitled to a reduction in their current annual renewal amount, which will stay in place for three years. The combined relief ensures that each and every class member stands to benefit from this Settlement, making it truly an exceptional result, particularly in light of the difficulties that lied ahead. Accordingly, Plaintiffs respectfully request that the Court grant this motion, certify the Settlement Class (defined below) for settlement purposes, appoint them as class representatives and their counsel as class counsel, and approve their proposed notice plan.

## II.     BACKGROUND

### A.     Plaintiffs' Allegations

Defendant operates the largest chain of fitness centers in the United States. (ECF No. 104, Third Amended Complaint ("TAC") ¶ 19.) Prior to 2006, Defendant's prepaid membership contracts stated that it would not increase the "Guaranteed Annual Renewal Amounts" for lifetime members so long as they remained members in good standing. After April 2006, however, Defendant changed the membership contracts to provide that the annual renewal amount was only guaranteed for an additional one year beyond the initial term.  Plaintiffs allege that Defendants' sales representatives continued to represent that the contract promised guaranteed lifetime renewal amounts, however, and explicitly told consumers – as they were trained to do – that there was "no need to spend the time to read all the fine print." (*Id*. ¶ 28, n. 7.) Despite complying with its promise for many years, on June 1, 2015, Defendant began informing many Prepaid Members that their Annual Renewal Amount would increase. Scores of members lodged complaints describing virtually identical sales pitches. (*Id*. ¶¶ 28–30.) Plaintiffs joined together in this now consolidated class action case asserting numerous causes of action under the laws of various states, including those of California, Oregon, Texas and Washington. (*Id*. ¶¶ 122-270.)

### B.     The Actions

On April 1, 2016, Plaintiffs O'Shea, Vitcov, and Morris filed a putative class action complaint against Defendant in this Court,[2] and on April 29, 2016, Plaintiff Marchewka filed a

---

[2]   *Kevin O'Shea, et al. v. 24 Hour Fitness USA, Inc.*, 16-cv-1668-EDL (N.D. Cal.).

materially identical lawsuit.[3] Those cases were consolidated for all purposes (the "Federal Action"), and those Plaintiffs filed an amended consolidated class action complaint (the "FAC") on December 9, 2016. Defendant moved to dismiss the FAC, and after full briefing, on September 1, 2017, the Court granted the motion dismissing all claims without prejudice, as barred by the applicable limitations periods. (ECF No. 98.) A Second Amended Complaint was filed on September 22, 2017 (the "SAC"). (ECF No. 100.)

On June 2, 2016, Plaintiff Shah filed a class action lawsuit against Defendant in California Superior Court in Alameda County, RG16818048 (the "State Action"), asserting claims similar to those asserted in the Federal Action. In the year leading up to this Settlement, counsel for Plaintiffs in the State Action and Federal Action coordinated their efforts and worked cooperatively with respect to informal discovery and settlement negotiation. (RB Decl. ¶¶6, 11.) Pursuant to the Settlement now before the Court, Plaintiff Shah has joined the other Plaintiffs as a named representative in a Conditional Third Amended Consolidated Complaint ("TAC"), which was filed by stipulation prior to this Motion. Assuming the Court finally approves the Settlement, the State Action will be dismissed with prejudice.

Starting in October 2016, the parties engaged in formal and informal discovery with Defendant. (*Id.* ¶¶10-13.) Defendant produced to Plaintiffs in both actions over 7,000 documents consisting of nearly 50,000 pages. (*Id.* ¶13.) Plaintiffs also produced to Defendants documents and affidavits amassed in the course of Plaintiffs' counsel's investigation. (*Id.* ¶12.)

### C.    The Parties' Settlement Discussions

Counsel for the parties met and conferred on dozens of occasions regarding ways to potentially narrow or resolve the claims in the Actions. (*Id.* ¶¶ 14-18.) The parties' counsel met in person on October 5, 2016. (*Id.* ¶14.) Thereafter, the parties attended two all-day mediation sessions on January 23 and 31, 2017, as well as several follow up mediation calls with Mr. Bates. (*Id.* ¶17.) Following substantial progress with Mr. Bates, the parties continued their discussions

---

[3]    *Russell Marchewka v. 24 Hour Fitness USA, Inc.*, 16-cv-02359-MEJ (N.D. Cal.).

directly in several more arm's-length negotiations and reached the Settlement now before the Court. (*Id.* ¶18.)

### III.   THE TERMS OF THE SETTLEMENT AGREEMENT

- **Settlement Class:** All individuals who enrolled in a "Prepaid Membership"[4] as indicated in 24 Hour Fitness's membership records system and who maintained their Prepaid Membership on or after April 1, 2015.[5] (Agreement ¶¶ 1.29, 1.30 & 1.45.)

- **Relief with Valid Claim Form and Declaration:** Each class member who submits a valid claim form and declaration is entitled to: (a) continued membership at the initial annual renewal amount for so long as the member timely pays and remains a member in good standing, and (b) if he or she has already paid an increased renewal amount, a full refund of the increased amounts paid (*i.e.*, the difference between the initial annual renewal amount and increased annual renewal amount paid). If a class member terminated his or her Prepaid Membership after receiving notice of an increase, he or she will be entitled to reinstatement at the initial annual renewal amount. (*Id.* ¶ 2.2.)

- **Automatic Relief:** Class members who *do nothing* (*i.e.*, do not submit a valid claim form and declaration) will be entitled to reduced annual renewal amounts according to three distinctions. First, current members whose annual renewal amount has not yet been increased will have the assurance that if Defendant increases their rates in the future, the increased amount will be capped for three years at $45 annually for Sport members and $90 annually for Super Sport members. Second, current members whose annual renewal amount already increased will receive a reduction in their current annual renewal amount equal to ten percent (10%) of the increase, and the amount will be fixed for three years. Third, members whose Prepaid Memberships terminated after notice of the annual renewal amount increase may reinstate their memberships with a reduction equal to ten percent (10%) of the increase, which will be fixed for three years. (*Id.* ¶ 2.1.)

- **Class Representative Incentive Award**: Defendant has agreed, subject to court approval, to pay an incentive award not to exceed $3,000 for each representative (in addition to the relief to which they are entitled as class members). (*Id.* ¶ 9.6.)

- **Attorneys' Fees and Costs**: 24 Hour Fitness has agreed, subject to Court approval, to pay attorneys' fees, costs and expenses together totaling one million, five-hundred thousand dollars ($1,500,000), which was negotiated at arm's length with the assistance of Mr. Bates. (*Id.* ¶ 9.5.)

---

[4]     The Agreement defines "Prepaid Membership," generally, as a 24 Hour Fitness membership agreement marketed or sold on or after April 1, 2006, which allows a Prepaid Member to prepay between one and three years of dues and renew annually for an Annual Renewal Amount. (Agreement ¶ 1.30.) The Settlement Class excludes: current 24 Hour Fitness employees; court officers, employees, the mediator, the parties' counsel and their respective immediate family members; persons who terminated a Prepaid Memberships who did not receive an increase notice; and persons who opt out of the Settlement.

[5]     April 1, 2015 marks the first date on which 24 Hour Fitness began notifying certain of its members of an imminent increase to their annual renewal amount. (TAC ¶ 3.)

- **Release**: Class members agree to release all claims arising out of or based upon allegations that Defendant deceived members into enrolling in a Prepaid Membership by representing that Annual Renewal Amounts were fixed, guaranteed, lifetime, for life, or could not ever be increased; improperly increased Annual Renewal Amounts; or breached any the Prepaid Membership by increasing the Annual Renewal Amount. (*See Id.* ¶¶ 1.39, 3.1, & 3.2 for full release language.)

## IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

In order to grant preliminary approval, the Court must first determine that the proposed settlement class is appropriate for certification. To do so, the class must meet the requirements of Rule 23(a) and at least one subsection of Rule 23(b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 621 (1997); Manual for Complex Litigation (Fourth) § 21.633 (2004).

Here, Plaintiffs seek certification under Rule 23(b)(3) and thus must demonstrate that the proposed class and proposed class representative meet six requirements: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representation; (5) predominance of common legal or fact questions; and (6) superiority. Fed. R. Civ. P. 23(a)(1)-(4) and 23(b)(3); *see also Kagan v. Wachovia Sec.*, L.L.C., 09-cv-5337-SC, 2012 WL 1109987, at *4-5 (N.D. Cal. Apr. 2, 2012). The proposed class meets each of these elements.

First, the proposed class is sufficiently numerous. Here, there are approximately 255,000 proposed class members, which includes 127,000 members whose annual renewal amounts increased. That is more than enough. *See Moshogiannis v. Sec. Consultants Grp., Inc.,* 10-cv-05971-EJD, 2012 WL 423860, at *3 (N.D. Cal. Feb. 8, 2012) (holding that numerosity is satisfied by class of 254 members).

Second, the proposed class shares common questions of law and fact.  Commonality is construed permissively and is demonstrated when the claims of all class members "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 2557 (2011) (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, the claims of class members stem from the same factual questions, including: (i) whether Defendant had a policy and/or practice of making misrepresentations regarding the terms of Prepaid Memberships; (ii) whether Defendant used marketing materials that contradicted the terms of its written contracts; and (iii) whether the contracts clearly disclosed the terms of the memberships. Those factual questions also lead to common questions of law, including: (i) whether Defendant

intended to defraud consumers by offering "lifetime guarantees" as part of Prepaid Memberships; (ii) whether it was reasonable for Plaintiffs and the class to rely on Defendant's misrepresentations; (iii) whether the oral misrepresentations of Defendant's sales representatives are relevant in determining the terms of the Prepaid Memberships; and (iv) whether the integration clauses in the contracts bar any evidence of oral misrepresentations. These common questions—and there are many more—are sufficient to establish commonality. *Dukes*, 131 S. Ct. at 2556 ("[E]ven a single common question will do").

Third, Plaintiffs' claims are typical of class member claims. A plaintiff's claim is typical where it arises from the same course of conduct that gives rise to the claims of other class members and is based on the same legal theory. *See Ambrosia v. Cogent Commun., Inc.,* 312 F.R.D. 544, 554 (N.D. Cal. 2016) (noting that typicality emphasizes "whether [named plaintiffs] other members have the same or similar injury…and whether other class members have been injured but the same course of conduct.") (citations omitted). Ultimately, this requirement ensures that "the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Here, Plaintiffs' nearly identical allegations are closely aligned with the thousands of alleged online complaints reflecting the same claims. Moreover, each Plaintiff reasonably relied on these misrepresentations and was subsequently harmed (when the amounts increased) in ways that were materially identical to the experiences of other members. Plaintiffs also are not subject to unique defenses that would distinguish their interests from those of the other class members. *See Marsh v. First Bank of Delaware*, 11-cv-05226-WHO, 2014 WL 554553, at *8 (N.D. Cal. Feb. 7, 2014) (quoting *Ellis v. Costco Wholesale Corp.,* 658 F.3d 970, 984 (9th Cir. 2011) (finding the typicality requirement satisfied when class members were allegedly injured by similar conduct and suffered similar harm, as "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought").

Fourth, Plaintiffs and proposed class counsel have and will continue to adequately represent the class. For adequacy, the Court must ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs

and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Appointing a plaintiff with typical claims who has retained adequate counsel is usually sufficient. *Dukes*, 131 S. Ct. at 2551 n.5 (discussing how the fulfillment of the typicality requirement usually also supports a finding of adequacy because an adequate representative will have claims that are typical of those of the class). Here, Plaintiffs share the same interest in securing relief for the claims in this case as every other class member – since they are harmed in the same way – and there is no evidence of any conflict of interest. Plaintiffs have demonstrated their continued willingness to vigorously prosecute this case. (RB Decl. ¶21.) Further, as discussed below, Plaintiffs have retained adequate counsel. *See, e.g., Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008) (finding adequacy met where plaintiffs "demonstrated their commitment to the action" and their attorneys were "qualified to represent the class").

Fifth, the proposed class satisfies the predominance requirement. Courts favor certification where, as here, "the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022. The predominance requirement tests "whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Id.* (citing *Amchem*, 521 U.S. at 623-24). Whether common issues predominate depends on "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). Plaintiffs' causes of action all hinge on the same central issues: (1) whether Defendant had a policy or practice of making misleading statements and discouraging consumers from reading the contract; (2) whether class members relied on those representations and omissions; (3) whether their reliance was reasonable in light of the written contracts that were presented to them; and (4) the amount of damages they suffered as a result.

These common questions can be resolved for all class members in a single adjudication. First, in claims alleging oral fraud or misrepresentation, the exact wording used by salespeople need not be identical.[6] *Cf. In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 140 F.R.D. 425,

---

[6]   In addition, because the Settlement provides full relief for class members who attest that they were told the annual renewal amount was guaranteed for life, any potential individual issues concerning oral representations are resolved by the settlement process itself. "Implicit in the

430-431 (D. Ariz. 1992) (finding that common issues predominated because although the individual statements made to class members "were not identical, they were sufficiently uniform to warrant class treatment," and noting that "the gravamen of the alleged fraud [was] not limited to the specific misrepresentations made" but rather addressed the "whole roster of deception designed to contrive a false image") (cited with approval in *In re First All. Mortgage Co.*, 471 F.3d 977, 991 (9th Cir. 2006)); *Makaeff v. Trump Univ., LLC*, 10-cv-0940-GPC, 2014 WL 688164, at *12-13 (S.D. Cal. Feb. 21, 2014) (certifying consumer fraud class over defendant's arguments that there were "no scripts or uniform promotional materials containing any material misrepresentation" because evidence of orchestrated uniform scheme made it "highly likely that each member of the putative class was exposed to the same misrepresentations").

Further, as California courts have made clear, only the named class representative—not all class members—must demonstrate reliance on a defendant's misrepresentations. *See, e.g.*, *In re Tobacco II Cases*, 207 P.3d 20, 35 (Cal. 2009) (explaining that "courts repeatedly and consistently []hold that relief under the UCL is available without individualized proof of deception, reliance and injury") And where the misrepresentations are material (a common legal issue), plaintiffs—including absent class members—are entitled to a presumption of reliance. *Id*. at 39 (for purposes of fraud, UCL, FAL, and CLRA claims, presumption of reliance "arises where there is a showing that a misrepresentation was material"); *McAdams v. Monier, Inc*., 182 Cal. App. 4th 174, 178 (2010) (an "inference of common reliance" may be applied to a CLRA class that alleges a material misrepresentation consisting of a failure to disclose a particular fact). Thus, where, as here, consumers are misled by uniform, material misrepresentations and/or omissions, courts presume reliance on a class-wide basis. *See Greenwood v. Compucredit Corp.*, 08-cv-4878, 2010 WL 4807095, at *5 (N.D. Cal. Nov. 19, 2010) (holding that where all class members received same alleged misrepresentations, reliance is presumed, and thus "individualized issues of reliance do not overcome the predominance of common issues in [such a] case").

---

satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996).

In addition, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…." *Amchem,* 521 U.S. at 620 (internal citations omitted). "[A]ny manageability problems that may have existed are eliminated by the settlement." *Ruch v. AM Retail Grp., Inc.*, 14-cv-05352-MEJ, 2016 WL 1161453, at *10 (N.D. Cal. Mar. 24, 2016).

Sixth, a class action is a superior method of resolving this controversy. Plaintiffs must show that a class action is the "most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175-76; *see also Valentino*, 97 F.3d at 1234-35 (finding a class action is superior when it will reduce the costs inherent in litigation and "no realistic alternative exists" for class members). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175. Here, the proposed class is comprised of approximately 255,000 members. By providing swift resolution of common claims in a way that would not be possible on an individual basis, a class action is the superior method of adjudication.

## V.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel…[who] must fairly and adequately represent the interest of the class." Fed. R. Civ. P. 23(g)(1)(B). The Court considers: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the type of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv); *see, e.g.*, *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*, 282 F.R.D. 486, 492 (C.D. Cal. 2012). The parties seek the appointment of Rafey Balabanian and Eve Lynn-Rapp of Edelson PC, Gordon Fauth of Finkelstein Thompson LLP, Timothy Mathews and Catherine Pratsinakis of Chimicles & Tikellis LLP, and Kristen Sagafi of Tycko & Zavareei LLP, as class counsel. Proposed class counsel readily satisfy the criteria of Rule 23(g).

Edelson PC has devoted—and will continue to devote—a significant amount of time and effort to this litigation, beginning with its initial investigation of Plaintiffs' allegations. (RB Decl.

¶23.) Through both formal and informal discovery, the lawyers at Edelson PC have tirelessly sought the information needed to develop Plaintiffs' claims and represent the class. (*Id.*) Further, they have extensive experience in similar complex litigation and have been appointed class counsel in numerous consumer class actions, many of them in this District. (*See id.*)[7]

Chimicles & Tikellis LLP ("C&T") and Tycko & Zavareei LLP ("TZ") have likewise devoted—and will continue to devote—a significant amount of time and effort to this litigation, including by playing an integral role in the negotiation and drafting of the Settlement, Claim Form, and Notice. C&T and TZ, along with Edelson, were instrumental in settlement negotiations, and C&T and Edelson bore the lion's share of responsibility among proposed class counsel in drafting the Settlement, Claim Form, and Notice. C&T and TZ are likewise pillars of the class action plaintiffs' bar, as reflected in their firms' resumes. (RB Decl. ¶2 .)[8]

Similarly, Finkelstein Thompson, LLP ("FT") has been instrumental in this litigation from its inception and in the Settlement before the Court. The firm's attorneys are experienced in class actions and have served in leadership positions in significant nationwide class litigation that has recovered billions of dollars of damages for class members, including in this District. (*Id.* ¶25.)[9]

---

[7]   *See Hopwood v. Nuance*, 13-cv-02132 (N.D. Cal.); *In re LinkedIn User Privacy Litig.*, 12-cv-03088-YGR (N.D. Cal.); *In re Netflix Privacy Litig.*, 11-cv-00379-EJD (N.D. Cal.) (appointing Edelson interim lead counsel, noting that while two other firms had impressive resumes and litigation experience, Edelson's "significant and particularly specialized expertise in…class action renders them superior to represent the putative class.").

[8]   Tim Mathews of C&T and Kristen Sagafi of TZ have been described as "among the most capable and experienced lawyers in the country in [consumer class action] cases." *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 902 (C.D. Cal. 2016). In addition, while it is rare, Mr. Mathews of C&T has held a lead role in several class action cases in which, like the Settlement here, plaintiffs achieved a full recovery, including two in this District: *Rodman v. Safeway*, 11-cv-3003-JST (N.D. Cal.) (judgment for 100% of damages plus interest recently affirmed by Ninth Circuit); *In re Apple iPhone/iPod Warranty Litig.*, 10-cv-1610-RS (N.D. Cal.) (settlement class members received, on average, a net recovery of 118% of the cost of replacement phones).

[9]   The firm was named one of the top 50 securities litigation firms for 2015 by Institutional Shareholder Services. Cases in which FT has worked to achieve successful results for class members include: *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2672-CRB (N.D. Cal.) (leadership committee member; $14.7 billion settlement); *Bloom v. American Home Products Corp.*, 98-cv-20047 (E.D. Pa.) (secured settlement valued at $239 million); *In re Relafen Antitrust Litig.*, 01-cv-12239-WGY, (D. Mass.) (executive committee member; settled for $175 million).

1   FT will continue to devote whatever resources are necessary to bring the litigation to a successful

2   conclusion. (*See id.*)

3   ## VI.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

4           After determining that the proposed class should be certified, the Court must determine

5   whether the Settlement warrants approval. The procedure for review of a proposed settlement is a

6   well-established two-step process: preliminary and final approval. Fed. R. Civ. P. 23(e); *see also*

7   Herbert Newberg & Alba Conte, Newberg on Class Actions § 11.25 at 3839 (4th ed. 2002). The

8   first step is a preliminary, pre-notification hearing to ensure that the settlement is not

9   "unacceptable at the outset." *Id.* Courts in this District grant preliminary approval where: "(1) the

10  proposed settlement appears to be the product of serious, informed non-collusive negotiations, (2)

11  has no obvious deficiencies, (3) does not improperly grant preferential treatment to class

12  representatives or segments of the class, and (4) falls within the range of possible approval." *In re*

13  *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting Manual for

14  Complex Litigation (Second) § 30.44 (1985)). *See also Cordy v. USS-Posco Indus.*, 12-cv-00553-

15  JST, 2014 WL 212587, at *2 (N.D. Cal. Jan 17, 2014) (quoting *Tableware*).

16          First, settlements that are the result of hard-fought litigation and arm's-length negotiations

17  among experienced counsel, such as this one, are "entitled to an initial presumption of fairness." *In*

18  *re High-Tech Employee Antitrust Litig.*, 11-cv-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30,

19  2013) (internal citations and quotations omitted); *see also Harris v. Vector Mktg. Corp.*, 08-cv-

20  5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). Settlement negotiations are generally

21  found to be non-collusive when reached with the assistance of a third-party neutral, *see e.g.*,

22  *Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.,* 12-cv-05259-JST, 2013 WL 6145706,

23  at *7 (N.D. Cal. Nov. 21, 2013), and are found to have been informed where the parties exchanged

24  evidence and information prior to negotiations. *See Moshogiannis*, 2012 WL 423860, at *5

25  (holding that settlement was fair, reasonable, and adequate where, *inter alia*, "the parties

26  conducted a significant amount of informal discovery…."). Here, the Settlement was reached after

27  significant discovery, with the assistance of a third-party neutral over two all-day mediation

28  sessions, following a substantial amount of additional negotiation. (RB Decl. ¶¶ 8-18).

Second, the Settlement is free of defects. A court is likely to find a settlement free from obvious deficiencies when it provides a real, immediate monetary benefit to the class despite numerous risks. *See Tableware*, 484 F. Supp. 2d. at 1080 (finding settlement providing a $500,000 fund free of obvious defects in light of "the anticipated expense and complexity of further litigation"). *See also In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding that a settlement for about one-sixth of the potential recovery was fair and adequate after accounting for "the difficulties in proving the case"). Here, the Settlement provides full relief to class members who attest that they were misled by Defendant's employees. Comparable settlements (*i.e.*, those involving unlawful fees and breach of contract) most often provide partial refunds or coupons.[10] Moreover, although class members who submit claims will receive full relief, a class member need not submit a claim form or take *any* steps to obtain some relief from the Settlement. This relief, which likely exceeds the relief class members could expect to obtain with a judgment, *see infra* Part VI.D, is exceptional in light of the litigation risks.[11]

Third, the Settlement does not provide preferential treatment to any individual class member. Of course, pure proportionality is not necessary to ensure that relief is fairly allocated. *McKnight v. Uber Techs., Inc.*, 14-cv-05615-JST, 2017 WL 3427985, at *3 (N.D. Cal. Aug. 7,

---

[10]    *Friedman v. 24 Hour Fitness USA*, *Inc*., 06-cv-06282-AHM (C.D. Cal. July 12, 2010) (granting final approval where plaintiffs could elect between partial reimbursement of charges, or a certificate for three free months of membership); *Silver v. L.A. Fitness Int'l, LLC*, 10-cv-002326 (E.D. Pa. Mar. 13, 2013) (granting preliminary approval where plaintiffs could elect between partial reimbursement (33.3%) of unlawful fees or a certificate for a 45-day membership, and could only receive a full refund *and* the certificate if they provided a certified mail receipt of their request to cancel); *Martina v. LA Fitness Int'l, LLC*, 12-cv-02063, 2013 WL 5567157 (D.N.J. Oct. 8, 2013) (granting final approval where one subclass of plaintiffs could elect either two free 25-minute personal training sessions or $100 credit towards a new membership, and a second subclass could elect a 33.3% refund of fees or certificate for a 45-day membership); *Hahn v. Massage Envy Franchising LLC*, 12-cv-00153-DMS, 2015 WL 2164981 at *2 (S.D. Cal. Mar. 6, 2015) (granting preliminary approval where class members expressly receive no "possibility of a refund," and instead either approximately 75% of forfeited prepaid massage services, to be used within six months, or a 30-day extension to redeem massage services, depending on their status).

[11]    The risks in this case were significant, with the Court having already dismissed Plaintiffs' FAC. (ECF No. 63.) When viewed in light of those risks, there should be no doubt that the Settlement it is not "obviously deficient." *See, e.g.*, *Tableware*, 484 F. Supp. 2d at 1080 ("Based on [the] risk and the anticipated expense and complexity of further litigation, the court cannot say the proposed settlement is obviously deficient….").

2017) (citing *Vandervort v. Balboa Capital Corp*., 8 F. Supp. 3d 1200, 1204 (C.D. Cal. 2014) (granting preliminary approval for a settlement that distributed funds by giving $175 to all class members who received at least one unsolicited fax, and up to $275 to class members who received additional faxes). The Settlement here contains no preferential treatment. The Settlement **automatically** entitles all class members to a reduced annual renewal amount without requiring them to complete or submit a claim form, and those who can truthfully attest that they were misled will receive full relief. Also, the Settlement calculates all refunds, reduced renewal amounts, and original renewal amounts on individual bases. In other words, rather than establishing a fixed refund or fixed annual renewal amount (which has the potential of either overcompensating or undercompensating most class members), the Settlement gives each class member relief proportional to his or her injury. *See, e.g., In re Volkswagen "Clean Diesel" Litig.*, 2672-CRB, 2016 WL 4010049, at *16 (N.D. Cal. July 26, 2016) (finding no preferential treatment where "buyback values" and "restitution payments" for class members were based on a standard, industry-accepted valuation of the individual class member's vehicle); *see also McKnight*, 2017 WL 3427985, at *3.[12]

Fourth, the Settlement falls well within the range of possible approval. "In determining whether the proposed settlement falls within the range of reasonableness, the Court evaluates the

---

[12]    Moreover, while each Plaintiff will seek a modest incentive award of $3,000 in recognition the time and effort spent pursing the claims as a class representative, no Plaintiff expected an incentive award and the request for such an award in no way provides class representatives preferential treatment. *See Villegas v. J.P. Morgan Chase & Co.*, 09-cv-00261, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012); *Cordy*, 2014 WL 212587, at *1, *3. In evaluating incentive awards, courts are concerned with whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). Here, class members who submit claim forms will be entitled to their original renewal rate for life. Given that Defendant already increased many class members' fees by as much as $100 per year and might have continued to apply future increases, the monetary value of this component may easily amount to thousands of dollars per class member. Thus, no significant disparity exists between the incentive payments and the recovery of the average class member. *See, e.g., Cox v. Clarus Marketing Grp, LLC*, 291 F.R.D. 473, 483 (S.D. Cal 2013) (approving a $5,000 incentive award where class members would receive a maximum payment of $36); *Fulford v. Logitech, Inc.*, 08-cv-02041-MMC, 2010 WL 807448, *3 n. 1 (N.D. Cal. 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000).

relative strengths and weaknesses of the Plaintiffs' case, and balances Plaintiffs' expected recovery against the value of the settlement offer." *Bickley v. Schneider Nat'l, Inc.*, 08-cv-05806-JSW, 2016 WL 4157355, at *1 (N.D. Cal. April 25, 2016) (citing *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935, (N.D. Cal. 2016)). Generally, satisfaction of the previous three factors is sufficient to satisfy this prong. *See Dilts v. Penske Logistics, L.L.C.*, 08-cv-0318-CAB, 2014 WL 12515159, at *3 (S.D. Cal. July 11, 2014) (finding that the settlement fell within the range of possible approval "given the fact that the settlement [was] the product of serious, informed and non-collusive negotiations, ha[d] no obvious defects, and [did] not improperly grant preferential treatment"). Here, the Settlement provides full relief for all class members who attest that they were misled, and at the same time provides some relief for any class member who do not so attest. This 100% recovery is well beyond the 13–34% recovery that courts have concluded falls "within the range of possible approval." *See, e.g.*, *Ma v. Covidien Holding, Inc.*, 12-cv-02161, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (citing *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998)) (approving 9.1% potential recovery as within the range of possible approval); *Villegas*, 2012 WL 5878390, at *6–7 (15% potential recovery); *Cordy*, 2014 WL 212587, at *3 (16–26% potential recovery).

## VII.   THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Once a class has been certified, due process and Rule 23 require that the court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That means, whenever possible "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice is adequate when it provides the information necessary to make a decision in language that can be readily understood by the average class member. *See* Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:53 (4th ed. 2002). Here, the format and language of each form of notice is straightforward and all of the information required under Rule 23 is present.

To ensure compliance with due process and Rule 23, the parties agreed to a four-part notice plan, developed by Rust Consulting, Inc. (the "Settlement Administrator"), a well-respected class action settlement administrator. First, the Settlement Administrator will send direct notice to the last known mailing address of class members as reflected in Defendant's records.[13] This first-class mailing will include class notice, the claim form, *and a postage prepaid return envelope*.[14] Second, beginning no later than ten (10) days after an order granting preliminary approval, the Settlement Administrator will establish, maintain, and update a settlement website, which will contain electronic versions of claim forms that can be submitted online and will provide additional information. Third, the Settlement Administrator will also maintain a toll-free number, utilizing both live operators and Interactive Voice Response. Finally, the Settlement Administrator will serve the notices required by CAFA, 28 U.S.C. § 1715(b)(1)-(8).

## VIII.  CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court: (1) certify the Settlement Class; (2) appoint Kevin O'Shea, Mark Vitcov, Rod Morris, Michael Losquadro, Dipti Shah, and Russell Marchewka as class representatives; (3) appoint Edelson PC, Finkelstein Thompson LLP, Chimicles & Tikellis LLP, and Tycko Zavareei LLP as class counsel; (4) grant preliminary approval of the proposed Settlement Agreement; (5) approve the proposed notice plan; and (6) grant such further relief the Court deems reasonable and just.

Dated: November 1, 2017                          Respectfully Submitted,

Kevin O'Shea, Mark Vitcov, Rod Morris, Michael Losquadro, Dipti Shah, and Russell Marchewka on behalf of themselves and the Settlement Class

---

[13]    Before initially mailing the class notice and claim form, the Settlement Administrator will run an update of the last known addresses in the Settlement Class List through the National Change of Address database. *See* Notice at Ex. 2 the of Settlement Agreement.

[14]    If this direct notice is returned to the Settlement Administrator as undeliverable, the Settlement Administrator will (a) re-mail any class notice so returned with a forwarding address, and (b) make reasonable efforts to attempt to find an address for any returned class notice that does not include a forwarding address. If the Settlement Administrator is unable to find an updated address for re-mailing, the Settlement Administrator will email notice to the last known email address provided in the notice list for such class member, where an email address is available.

1

/s/ Rafey S. Balabanian
2
Rafey S. Balabanian (SBN - 315962)
rbalabanian@edelson.com
3
Eve-Lynn Rapp (admitted *pro hac vice*)
erapp@edelson.com
4
EDELSON PC
123 Townsend Street, Suite 100
5
San Francisco, California 94107
Tel: 415.212.9300
6
Fax: 415.373.9435

7
Douglas Thompson, Jr. (admitted *pro hac vice*)
dthompson@finkelsteinthompson.com
8
FINKELSTEIN THOMPSON LLP
James Place
9
1077 30th Street, N.W., Suite 150
Washington, DC 20007
10
Tel: 202.337.8000
Fax: 202.337.8090
11

Gordon M. Fauth, Jr. (SBN 190280)
12
gfauth@finkelsteinthompson.com
Of Counsel to
13
FINKELSTEIN THOMPSON LLP
100 Pine Street, Suite 1250
14
San Francisco, CA 94111
Tel: 415.398.8700
15
Fax: 415.398.8704

16
Timothy N. Mathews (*pro hac vice* pending)
tnm@chimicles.com
17
Catherine Pratsinakis (*pro hac vice* pending)
cp@chimicles.com
18
CHIMICLES & TIKELLIS LLP
One Haverford Centre
19
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
20
Tel: 610.642.8500
Fax: 610.649.3633
21

Kristen L. Sagafi (SBN- 222249)
22
ksagafi@tzlegal.com
TYCKO & ZAVAREEI LLP
23
483 Ninth Street – Suite 200
Oakland, CA 94607
24
Tel: (510) 254-6810

25

26

27

28

## CERTIFICATE OF SERVICE

I, Rafey S. Balabanian, an attorney, certify that on November 1, 2017, I served the above and foregoing *Plaintiffs' Motion for Preliminary Approval of Class Action Settlement Agreement* by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/     Rafey S. Balabanian