1   Rafey S. Balabanian (SBN - 315962)
    rbalabanian@edelson.com
2   Eve-Lynn Rapp (admitted *pro hac vice*)
    erapp@edelson.com
3   EDELSON PC
    123 Townsend Street, Suite 100
4   San Francisco, CA 94107
    Telephone: (415) 212-9300
5   Facsimile: (415) 373-9435

6   Gordon M. Fauth, Jr. (SBN 190280)
    gfauth@finkelsteinthompson.com
7   Of Counsel to
    FINKELSTEIN THOMPSON LLP
8   100 Pine Street, Suite 1250
    San Francisco, CA 94111
9   Telephone: (415) 398-8700
    Direct: (510) 238-9610
10  Facsimile: (415) 398-8704

11  Timothy N. Mathews (*pro hac vice* pending)
    TNM@chimicles.com
12  Catherine Pratsinakis (*pro hac vice* pending)
    CP@chimicles.com
13  CHIMICLES & TIKELLIS LLP
    One Haverford Centre
14  361 West Lancaster Avenue
    Haverford, Pennsylvania 19041
15  Tel: (610) 642-8500
    Fax: (610) 649-3633
16
    [Additional counsel listed on signature page]
17  *Counsel for Plaintiffs and the Settlement Class*

18                **UNITED STATES DISTRICT COURT**

19              **NORTHERN DISTRICT OF CALIFORNIA**

20

21  IN RE 24 HOUR FITNESS PREPAID          CASE NO. 4:16-cv-01668-JSW
    MEMBERSHIPS LITIGATION
22                                         CONSOLIDATED CASES:
                                               No. 3:16-cv-01668-JSW
23                                             No. 3:16-cv-02359-JSW

24                                         **PLAINTIFFS' NOTICE OF MOTION
                                           AND MOTION FOR FINAL APPROVAL
25                                         OF CLASS ACTION SETTLEMENT
                                           AGREEMENT**

26                                         Judge:       Jeffrey S. White
                                           Date:        June 1, 2018
27                                         Time:        9:00 A.M.
                                           Courtroom:   5, 2nd Floor
28

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on June 1, 2018 at 9:00 a.m., or at such other time as may be set by the Court, Plaintiffs Kevin O'Shea, Mark Vitcov, Rod Morris, Michael Losquadro, Dipti Shah, and Russell Marchewka will appear, through counsel, before the Honorable Jeffrey S. White, or any Judge sitting in his stead, in Courtroom 5, 2nd Floor, 1301 Clay Street, Oakland, California 94612, and then and there, respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant final approval of the class action settlement reached between themselves and Defendant 24 Hour Fitness USA, Inc.

Plaintiffs' motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, including the Parties' proposed class action Settlement Agreement, the Declarations of Rafey S. Balabanian of Edelson PC, Jason M. Stinehart of Rust Consulting, and Jeffrey Houston of 24 Hour Fitness, filed simultaneously herewith, and the record in this matter, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

Respectfully Submitted,

**KEVIN O'SHEA, MARK VITCOV, ROD MORRIS, MICHAEL LOSQUADRO, DIPTI SHAH, AND RUSSELL MARCHEWKA,** individually and on behalf of all others similarly situated,

Dated: April 27, 2018

By: /s/  Rafey S. Balabanian

Rafey S. Balabanian (SBN - 315962)
rbalabanian@edelson.com
Eve-Lynn Rapp (admitted *pro hac vice*)
erapp@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, CA 94107
Tel: 415.212.9300
Fax: 415.373.9435

Douglas Thompson, Jr. (admitted *pro hac vice*)
dthompson@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
James Place
1077 30th Street, N.W., Suite 150
Washington, DC 20007
Tel: 202.337.8000

1    Fax: 202.337.8090

2    Gordon M. Fauth, Jr. (SBN 190280)
     gfauth@finkelsteinthompson.com
3    Of Counsel to
     FINKELSTEIN THOMPSON LLP
4    100 Pine Street, Suite 1250
     San Francisco, CA 94111
5    Tel: 415.398.8700
     Fax: 415.398.8704

6
     Timothy N. Mathews (*pro hac vice* pending)
7    TNM@chimicles.com
     CHIMICLES & TIKELLIS LLP
8    One Haverford Centre
     361 West Lancaster Avenue
9    Haverford, Pennsylvania 19041
     Tel: 610.642.8500
10   Fax: 610.649.3633

11   Kristen L. Sagafi (SBN- 222249)
     ksagafi@tzlegal.com
12   TYCKO & ZAVAREEI LLP
     483 Ninth Street – Suite 200
13   Oakland, CA 94607
     Tel: (510) 254-6810

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SUMMARY OF ARGUMENT

The Court should grant Plaintiffs' motion for final approval of the class action settlement reached between Plaintiffs and Defendant 24 Hour Fitness (the "Settlement").

The Court must determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess the fairness of a settlement, courts look to eight factors articulated by the Ninth Circuit in *Churchill Vill., L.L.C. v. Gen. Elec.* 361 F.3d 566, 575 (9th Cir. 2004). After finding that the so-called *Churchill* factors have been met, the Court must also determine that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (internal quotations omitted).

The proposed Settlement undoubtedly warrants final approval. All eight *Churchill* factors weigh strongly in favor of final approval: (1) "the strength of the [Plaintiffs'] case," *Churchill*, 361 F.3d at 575—which the Court has already once dismissed as time-barred—would undoubtedly present significant obstacles in continuing litigation; (2) there is clear "risk, expense, complexity, and likely duration of further litigation," *id.*, given Defendant's vigorous defenses on the merits and probable challenges to class certification; (3) there is a "risk of maintaining class action status throughout the trial," *id.*, due to the potentially individualized issues surrounding the representations made to class members, among other things; (4) "the amount offered in the settlement," *id.*, provides 100% of the potential recovery available to class members at trial; (5) "the extent of discovery completed and the stage of the proceedings," *id.*—which included witness interviews and a substantial document production from Defendant—offered the parties sufficient information to make an informed settlement decision; (6) "the experience and view of counsel," *id.*—who have extensive experience litigating and settling consumer class actions—favor final approval; (7) there was no "presence of a governmental participant," *id.*, opposing the Settlement; and (8) there was an overwhelmingly positive "reaction of the class members [to] the proposed settlement," *id.*, as more than one third of the class members have submitted claim forms. Additionally, the Settlement was reached with the assistance of a third-party mediator and was not the product of collusion between the parties.

Accordingly, the Court should grant final approval to the Settlement.

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................ 1

II.    TERMS OF THE SETTLEMENT ...................................................... 1

     A.    Class Definition ........................................................... 2

     B.    Class Member Relief ....................................................... 2

         1.    Relief with Valid Claim Form and Declaration ............... 2

         2.    Automatic Relief ....................................................... 2

     C.    Notice and Administration Costs .................................... 3

     D.    Incentive Awards and Attorneys' Fees ............................. 3

     E.    Release ................................................................. 3

III.   THE NOTICE PLAN HAS BEEN SUCCESSFULLY EXECUTED AND SATISFIED DUE PROCESS ................................................. 3

IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL .................. 5

     A.    The *Churchill* Factors All Weigh in Favor of Final Approval ............. 5

         1.    Ultimate success on Plaintiffs' claims was not guaranteed ............... 5

         2.    The Settlement is preferable to the risk, expense, complexity, and duration of continued litigation ............... 7

         3.    The risk of maintaining class status favors approval of the Settlement ................................................. 8

         4.    The relief offered in the Settlement is exceptional ............... 8

         5.    The Parties had sufficient information to make an informed settlement decision ................................. 9

         6.    Class counsel believes—based on their extensive experience litigating and settling consumer class actions—that the Settlement is in the best interests of the class ............... 10

         7.    No governmental entity opposes the Settlement ............... 11

         8.    Class members' reaction supports final approval ............... 11

     B.    The Settlement is Not the Product of Collusion Between the Parties ............. 13

V.     LATE CLAIMS SHOULD BE ACCEPTED ................................. 15

VI.    CONCLUSION ............................................................. 15

1

## <u>TABLE OF AUTHORITIES</u>

2

**United States Court of Appeals Cases**

3

*In re Bluetooth Headset Prods. Liab. Litig.,*

4
     654 F.3d 935 (9th Cir. 2011) ................................................................5, 14, 15

5

*Churchill Vill., L.L.C. v. Gen. Elec.,*

6
     361 F.3d 566 (9th Cir. 2004) .................................................................*passim*

7

*Class Plaintiffs v. City of Seattle,*
     955 F.2d 1268 (9th Cir. 1992) ........................................................................ 5

8

*Couser v. Comenity Bank,*

9
     125 F. Supp. 3d 1034 (S.D. Cal. 2015) .........................................................12

10

*Cruz v. Sky Chefs, Inc.,*

11
     No. 12-cv-02705, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ...................12

12

*Davis v. HSBC Bank Nev., N.A.,*
     691 F.3d 1152 (9th Cir. 2012) ........................................................................ 6

13

14

*In re Hyundai & Kia Fuel Economy Litig.,*
     881 F.3d 679 (9th Cir. 2018) .......................................................................... 8

15

*In re Lawrence,*

16
     516 B.R. 59 (Bankr. E.D.N.C. 2014)...........................................................13

17

*Linney v. Cellular Alaska P'ship,*

18
     151 F.3d 1234 (9th Cir. 1998) ........................................................................ 9

19

*Marshall v. Holiday Magic, Inc.,*
     550 F.2d 1173 (9th Cir. 1977).......................................................................11

20

*Moore v. PaineWebber, Inc.,*

21
     306 F.3d 1247 (2d Cir. 1999) ......................................................................... 8

22

*In re Online DVD-Rental Antitrust Litig.,*

23
     779 F.3d 934 (9th Cir. 2015) .......................................................................... 5

24

*Rodriguez v. W. Publ'g Corp.,*
     563 F.3d 948 (9th Cir. 2009) ..................................................................6, 8, 10

25

*Silber v. Mabon,*

26
     18 F.3d 1449 (9th Cir. 1994) ......................................................................... 3

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO. 4:16-CV-01668-JSW

**United States District Court Cases**

*Bayat v. Bank of the W.*,
No. 13-cv-02376, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015) ...............................7, 8

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015)..............................................................................*passim*

*Ching v. Siemens Indus., Inc.*,
No. 11-cv-04838, 2014 WL 2926210 (N.D. Cal. June 27, 2014)................................7, 8

*G.F. v. Contra Costa Cty.*,
No. 13-cv-03667, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) .................................. 5

*LaGarde v. Support.com, Inc.*,
No. 12-cv-00609, 2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ................................. 8

*Larsen v. Trader Joe's Co.*,
No. 11-cv-05188, 2014 WL 3404531 (N.D. Cal. July 11, 2014)...........................*passim*

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ...........................................................................*passim*

*Messineo v. Ocwen Loan Servicing, LLC*,
No. 15-cv-02076, 2017 WL 733219 (N.D. Cal. Feb. 24, 2017)...................................... 9

*Nemec v. Linebarger*,
No. 14-cv-01343, 2014 WL 6847342 (N.D. Cal. Dec. 4, 2014) .................................... 6

*Rosenfeld v. JPMorgan Chase Bank, N.A.*,
732 F. Supp. 2d 952 (N.D. Cal. 2010) ......................................................................... 6

*In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014)..................................................................................14

*Vincent v. Reser*,
No. 11-cv-03572, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013)....................................14

*Walsh v. Kindred Healthcare*,
No. 11-cv-00050, 2013 WL 6623190 (N.D. Cal. Dec. 16, 2013) .................................. 3

**Statutory Provisions**

28 U.S.C. § 1715 .............................................................................................................. 4

Fed. R. Civ. P. 23 ....................................................................................................*passim*

**Other Authorities**

Federal Judicial Center,
*Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://perma.cc/XUR6-DJJH ................................................. 3

PLAINTIFFS' MOTION FOR FINAL APPROVAL
CASE NO. 4:16-CV-01668-JSW

I.      **INTRODUCTION**

Plaintiffs Kevin O'Shea, Mark Vitcov, Rod Morris, Michael Losquadro, Dipti Shah, and Russell Marchewka seek final approval of the Settlement reached with Defendant 24 Hour Fitness resolving claims that 24 Hour Fitness raised gym membership annual renewal rates in violation of promises to customers that renewal rates were fixed for life. The Settlement was reached after more than two years of active litigation in two forums, and months of arm's-length negotiations facilitated by John B. Bates of JAMS. The relief provided by the Settlement is superlative: class members who submit a valid claim form will receive a *full refund* of any amounts they paid in excess of their originally-promised renewal rates and are entitled to continue to renew their membership annually at their originally-promised rate. Furthermore, even for class members who do *not* submit claim forms, the Settlement provides for reduced annual renewal rates going forward. Between the cash refunds and the reduced annual renewal rates, the Settlement provides relief to class members conservatively estimated to be in the tens of millions of dollars.

This Court conditionally certified the class and preliminarily approved the Settlement, after which notice was provided to class members. Not surprisingly, the response from the class has been overwhelmingly positive: over 34% of the class has submitted claim forms—an extraordinary claims rate—and there have been minimal opt outs and objections. As explained more fully below, the Settlement is eminently fair and reasonable, and not the product of collusion between the Parties. All the factors considered by the Ninth Circuit weigh strongly in favor of granting final approval to the Settlement, and Plaintiffs respectfully requests that this Court do so.[1]

II.     **TERMS OF THE SETTLEMENT AGREEMENT**

The terms of the Settlement, summarized here, are set forth in the Joint Stipulation to Settlement Agreement and a stipulated amendment to the agreement (collectively, the "Settlement Agreement," "Settlement," or "Agreement"). (*See* Attachments A & B to the Declaration of Rafey Balabanian ("Balabanian Decl."), attached hereto as Exhibit 1.)

---

[1]     The case history and background facts are fully set forth in Plaintiffs' Motion for Attorneys' Fees and Expense Reimbursements and Plaintiff Service Awards. (Dkt. 124.) Pursuant to the Northern District of California's Procedural Guidance of Class Action Settlements, they are not repeated here.

**A.**     **Class Definition:** On December 14, 2017, this Court certified the Settlement Class consisting of "all Persons in the United States who were enrolled in a 24 Hour Fitness Prepaid Membership as of April 2015, as indicated in 24 Hour Fitness's membership records system," (dkt. 121 at 1; Agreement ¶ 1.45).[2]

**B.**     **Class Member Relief:** The Settlement secures (1) monetary and prospective relief for class members who submit a valid claim form and declaration, and (2) automatic prospective relief for class members who do nothing.

**1.**     **Relief with Valid Claim Form and Declaration:** Each class member who submits a valid claim form and declaration will receive (a) a full refund of any amounts paid representing the difference between that class member's initial Annual Renewal Amount and any increased Annual Renewal Amounts, and (b) the right to continue membership at the initial Annual Renewal Amount for as long as the class member timely pays and remains a member in good standing. (Agreement ¶ 2.2.) If the class member terminated their Prepaid Membership after receiving notice of an increased Annual Renewal Amount, that class member is entitled to reinstatement of their Prepaid Membership at their initial Annual Renewal Amount. (*Id.* ¶ 2.2(c).)

**2.**     **Automatic Relief:** Class members who *do not* submit a valid claim form and declaration are still entitled to reduced-rate prepaid memberships. For current 24 Hour Fitness members whose Annual Renewal Amount has not yet increased, 24 Hour Fitness agrees not to increase their renewal amount by more than $45 ($90 for Super-Sport or Ultra-Sport memberships) for the next three years. (*Id.* ¶ 2.1(a).) For current 24 Hour Fitness members who *have* been notified of an increased Annual Renewal Amount, their Annual Renewal Amount will be reduced for the next three years by 10% of the increase amount. (*Id.* ¶ 2.1(b).)[3]

---

[2]     The class definition excludes employees and immediate family members of Defendant, the Court, the mediator, and all counsel; anyone who opts out of the Settlement; and anyone whose Prepaid Membership was terminated but who did not receive notice of an increased Annual Renewal Amount. (Dkt. 121 at 1.)

[3]     If a former 24 Hour Fitness member terminated their membership after being notified of an increased Annual Renewal Amount, the Settlement Agreement allows that person to reinstate their membership at a rate reduced by 10% of the increase, and which will remain fixed for three years. Such persons must submit a claim form requesting reinstatement. (Agreement ¶ 2.1(c).)

  **C.**   **Notice and Administration Costs:** Defendant has agreed to pay all notice costs, as well as all costs of settlement administration incurred by the Settlement Administrator. (*Id*. ¶ 4.9.)

  **D.**   **Incentive Awards and Attorneys' Fees:** Subject to the Court's approval, Defendant will pay an incentive award of $3,000 to each class representative, and attorneys' fees and expenses in an amount up to $1,500,000. (*Id*. ¶¶ 9.1 and 9.6.) Plaintiffs have filed a separate petition for these awards. (Dkt. 124.)

  **E.**   **Release:** In exchange for the relief described above, class members will be deemed to have released all claims arising out of or based upon allegations that Defendant deceived them into enrolling in a prepaid membership by representing that renewal amounts were fixed, or that Defendant improperly increased Annual Renewal Amounts. (*See* Agreement ¶¶ 1.39, 3.1, and 3.2 for full release language.)

## III.   THE NOTICE PLAN HAS BEEN SUCCESSFULLY EXECUTED AND SATISFIED DUE PROCESS.

  Before granting final approval to the Settlement, the Court must determine whether the notice provided to the class was "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice "must clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class, among other things. *Id*. While Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each individual actually receive notice. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994); *see also Walsh v. Kindred Healthcare*, No. 11-cv-00050, 2013 WL 6623190, at *3 (N.D. Cal. Dec. 16, 2013). The Federal Judicial Center has suggested that a notice plan that reaches at least 70% of the class is reasonable. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), *available at* https://perma.cc/XUR6-DJJH.

  Here, the Court approved the Notice Plan set forth in the Settlement Agreement, which called for direct notice by first-class mail to all members of the class, as well as the creation of a detailed settlement website (the "Notice Plan"). (Dkt. 121 ¶ 7; Agreement ¶ 4.) The Court-

1  approved Notice Plan also specified the content of the notices, which used simple, plain language
2  to encourage readership and comprehension. (Dkt. 116 at 10-21) (amended notice form approved
3  by Court). The Court appointed Rust Consulting, Inc. ("Rust") as the Settlement Administrator.
4  (Dkt. 121 ¶ 6.)

5      The Parties and Rust have diligently implemented the Notice Plan. On December 20, 2017,
6  Rust received a list of all 257,457 class members and their last known mailing address. (Stinehart
7  Decl. ¶ 4.)[4] After running the list through the National Change of Address database (resulting in
8  updated addresses for 26,047 class members), Rust sent a copy of the Court-approved class notice
9  to all 257,457 class members by first class mail. (*Id.* ¶¶ 5-6.) 9,470 of the notices were returned as
10 undeliverable, some with forwarding addresses and some without. (*Id.* ¶¶ 7-8.) Those that were
11 returned without a forwarding address were run through an advanced address search to locate a more
12 current address. (*Id.* ¶ 8.) Rust re-mailed 6,813 of the notices initially returned as undeliverable to
13 updated addresses. (*Id.* ¶¶ 7-8.) And while 2,657 of these were ultimately returned a second time as
14 undeliverable (*id.* ¶ 9), the end result of these efforts was that 254,800 class members—around 99%
15 of the class—were sent direct mail notice of the Settlement.[5]

16     In addition to direct notice, Rust also established a settlement-specific website,
17 www.prepaidmembershipsettlement.com, which contains relevant information about the
18 Settlement—including court documents—and through which users can submit an online claim.
19 (*Id.* ¶ 11.) Rust also established a dedicated toll-free telephone number that class members can call
20 for information about the Settlement. (*Id.* ¶ 12.)

21     Finally, CAFA also required sending notice of the Settlement to the U.S. Attorney General
22 and the Attorneys General of each of the 50 states and the District of Columbia. 28 U.S.C. § 1715.
23 The required CAFA notice was sent on November 10, 2017. (Stinehart Decl. ¶ 10.)

24

25 _____

[4]    The Declaration of Jason M. Stinehart ("Stinehart Decl."), a Program Manager for Rust, is
26 attached hereto as Exhibit 2.
[5]    Rust also obtained last known email addresses for 1,855 of the class members whom it was
27 unable to successfully trace by direct mail and emailed them a copy of the class notice. (Stinehart
   Decl. ¶ 9.) Thus, all but 802 class members—almost 99.7% of the class—received direct notice of
28 the Settlement either through mail or email.

IV.     **THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL.**

In addition to determining that notice was sufficient, this Court must hold a hearing and find the Settlement "fair, reasonable, and adequate" before giving it final approval. Fed. R. Civ. P. 23(e)(2); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). The Ninth Circuit has recognized "the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), and "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Online DVD-Rental*, 779 F.3d at 944. To assess the fairness of a settlement, courts look to the eight so-called *Churchill* factors:

> (1) The strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members [to] the proposed settlement.

*Id.* (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). In addition, where—as here—the Parties reached a Settlement prior to adversarial class certification, "[t]he district court's approval order must show not only that it has explored the *Churchill* factors comprehensively, but also that the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (internal quotations omitted). Here, each of the *Churchill* factors weighs in favor of final approval, and the Settlement was not the product of collusion between the Parties.

     **A.      The *Churchill* Factors All Weigh in Favor of Final Approval.**

          **1.      Ultimate success on Plaintiffs' claims was not guaranteed.**

The first *Churchill* factor—the strength of Plaintiffs' case—weighs in favor of final approval because there is no guarantee that Plaintiffs would ultimately succeed on the merits if litigation were to continue. "Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case." *G.F. v. Contra Costa Cty.*, No. 13-cv-03667, 2015 WL 7571789, at *8 (N.D. Cal. Nov. 25, 2015). In assessing the strength of a plaintiff's case, "there is no 'particular formula by which th[e] outcome must be tested.'" *Bellinghausen v. Tractor*

*Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Rather, "the Court's assessment of the likelihood of success is 'nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* (quoting *Rodriguez*, 563 F.3d at 965). Here, while Plaintiffs have some confidence that they would ultimately have prevailed at trial, success was by no means guaranteed.

For instance, the Court already once dismissed this case as time-barred. (Dkt. 98.) While that dismissal was without prejudice to Plaintiffs' right to file a second amended complaint alleging facts sufficient to support the tolling of applicable statutes of limitations—and Plaintiffs did amend their complaint accordingly (dkt. 100)—there is no guarantee that the second amended complaint would have survived another timeliness attack. In addition, 24 Hour Fitness had also argued in its motion to dismiss that Plaintiffs should have been more diligent reading the terms and conditions of their contracts (whose fine print stated that 24 Hour Fitness had the right to increase annual dues on their Prepaid Memberships after 12 months), rather than relying on the alleged misrepresentations of 24 Hour Fitness employees. (Dkt. 65 at 4-9.) Similar arguments have met with some success in this Circuit. *See, e.g., Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1163-64 (9th Cir. 2012) (finding it unreasonable for plaintiff to rely on defendant's purported misrepresentations when he failed to read contract); *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 965-66, 971-74 (N.D. Cal. 2010) (dismissing claims alleging that defendant "deceive[d] [plaintiff] into believing that the 1% interest rate would be fixed for the life of the loan," because "the Adjustable Rate Rider attached to the [Deed of Trust], which Plaintiff executed, clearly explains the terms of repayment[,] [a]nd Plaintiff has a duty to read the terms of a contract before signing"). *See also Nemec v. Linebarger*, No. 14-cv-01343, 2014 WL 6847342, at *4 (N.D. Cal. Dec. 4, 2014) (holding that "misrepresentation of a contractual clause alone does not render the clause void when the allegedly defrauded party had a reasonable opportunity to discover the clause's actual terms").

The statutes of limitations and substantive defenses asserted presented significant obstacles to Plaintiffs' ability to achieve ultimate recovery through continued litigation. Though not insurmountable, these hurdles show that the first *Churchill* factor supports final approval of the

Settlement. *See In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("[B]ecause ultimate success at trial is far from certain, this factor weighs strongly in favor of the settlement."); *Bayat v. Bank of the W.*, No. 13-cv-02376, 2015 WL 1744342, at *3 (N.D. Cal. Apr. 15, 2015) ("Because the strength of Plaintiffs' claims is in doubt, the first *Churchill Village* factor tips in favor of final approval of the settlement."); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) ("significant risks that lie ahead through summary judgment and trial" weighed in favor of first *Churchill* factor).

> ### 2.    The Settlement is preferable to the risk, expense, complexity, and duration of continued litigation.

The second *Churchill* factor—the risk, expense, complexity, and likely duration of further litigation—also weighs in favor of final settlement approval. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotations omitted). Here, continued litigation would be costly, in terms of both time and money. *See id.* (noting that this *Churchill* factor looks to "the probable costs, in both time and money, of continued litigation") (internal quotations omitted). 24 Hour Fitness has vigorously defended this action thus far, raising several different arguments in its motion to dismiss (dkt. 65), and it would continue to strongly press its defenses should litigation continue, resulting in the expenditure by both sides of significant resources. *See Bayat*, 2015 WL 1744342, at *4 ("Absent settlement, the costs and complexity of this case will certainly increase as motions to dismiss, summary judgment motions, and class certification motions (along with associated discovery) will need to be litigated."). In addition, the losing party will almost certainly appeal, further raising the costs in terms of both time and money. *See id.* ("[R]egardless of who prevails on the merits … the losing party would likely appeal, thus significantly prolonging this litigation and increasing its expense and complexity.").

In contrast to the continued expenditure of time and money, the Settlement provides immediate relief to class members. And avoiding unnecessary litigation benefits not just the class, but the Defendant and this Court as well. *See Larsen*, 2014 WL 3404531, at *4 ("Avoiding such

1  unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well

2  as conserve judicial resources."); *Ching*, 2014 WL 2926210, at *3 (same). Especially in light of

3  the not insignificant risks to obtaining ultimate recovery for class members through litigation as

4  discussed above, this *Churchill* factor thus weighs strongly in favor of final settlement approval.

5  *See LaGarde v. Support.com, Inc.*, No. 12-cv-00609, 2013 WL 1283325, at *4 (N.D. Cal. Mar. 26,

6  2013) ("In light of the risks and costs of continued litigation, the immediate rewards to class

7  members are preferable.").

8          **3.      The risk of maintaining class status favors approval of the Settlement.**

9          The third *Churchill* factor—the risk of maintaining class action status throughout trial—

10 likewise weighs in favor of approving the Settlement. Though this Court conditionally certified the

11 class for settlement purposes (dkt. 121 at 1), 24 Hour Fitness undoubtedly would have challenged

12 a motion for class certification had litigation continued, arguing that any oral misrepresentations

13 were made by rogue agents, and that discerning the contents of these representations create

14 individualized issues. *See Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 1999)

15 (noting that "the Third, Fourth, Fifth, Sixth, and Seventh Circuit…have held that oral

16 misrepresentations are presumptively individualized."). There is also a risk that 24 Hour Fitness

17 would argue that differences in state law defeat predominance. *See In re Hyundai & Kia Fuel*

18 *Economy Litig.*, 881 F.3d 679 (9th Cir. 2018).

19         "Although a class can be certified for settlement purposes, the notion that a district court

20 could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a

21 settlement." *LinkedIn*, 309 F.R.D. at 587 (citing *Rodriguez*, 563 F.3d at 966). Though Plaintiffs

22 are confident that the settlement class here satisfies all the requirements of Rule 23, the potential

23 risk of decertification weighs in favor of final settlement approval. *Id.* ("[T]he risk of never

24 obtaining or losing class status in the absence of settlement weighs in favor of approval.").

25         **4.      The relief offered in the Settlement is exceptional.**

26         The fourth *Churchill* factor—the relief offered in settlement—"is generally considered the

27 most important." *Bayat*, 2015 WL 1744342, at *4. "It is well-settled law that a proposed

28 settlement may be acceptable even though it amounts to only a fraction of the potential recovery

that might be available to the class members at trial." *Bellinghausen*, 306 F.R.D. at 256. Here, however, the Settlement provides *100% of the potential recovery available to class members at trial.* As explained above, any class member submitting a valid claim form and declaration will receive a *full refund* of all renewal amounts paid in excess of their initial renewal rate, as well as the right to continue (or reinstate) their 24 Hour Fitness membership *at their original renewal rate.* The Settlement thus allows class members to be made whole and, with the possible exception of pre-judgment interest and punitive damages, provides them with everything they asked for in this litigation. (*See* dkt. 100 at 52-53.) And even if a class member chooses not to submit a claim form and declaration, they *still* get the automatic prospective relief of reduced Annual Renewal Amounts for the next three years. The full recovery made available to all class members here is far in excess of many settlements approved by courts in this district. *See, e.g., Messineo v. Ocwen Loan Servicing, LLC*, No. 15-cv-02076, 2017 WL 733219, at *5 (N.D. Cal. Feb. 24, 2017) (collecting cases approving settlements providing around 14% of damages recoverable at trial). Consequently, this most important factor weighs heavily in favor of final settlement approval.

### 5.    The Parties had sufficient information to make an informed settlement decision.

The next *Churchill* factor—the extent of discovery completed and the stage of the proceedings—"evaluates whether 'the parties have sufficient information to make an informed decision about settlement.'" *Larsen*, 2014 WL 3404531, at *5 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Formal discovery is not a requirement for final settlement approval; "[r]ather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution." *Bellinghausen*, 306 F.R.D. at 257 (internal quotations omitted). Here, the Parties had extensively investigated the claims and possessed sufficient information to allow them to make an informed decision to enter into the Settlement.

The Parties' investigation was significant. As explained in Plaintiffs' fee petition, Plaintiffs' counsel spent considerable time and resources locating and interviewing witnesses, including gym members and former employees. (Dkt. 124 at 3.) They also combed through consumer complaint boards and websites, including that of the Better Business Bureau, reviewing over 650 pages of

1   complaints. (*Id.*) In addition, 24 Hour Fitness produced over 7,000 documents in response to

2   document requests—consisting of nearly 50,000 pages—included marketing and sales materials,

3   internal emails, and employee presentations. (*Id.* at 3-4.) The Parties' understanding of the issues

4   was further honed during months of motion practice, mediation sessions, and settlement

5   negotiations. All of the information gathered throughout the entire year and a half of litigation

6   allowed the parties to make reasonable and informed settlement decisions, and this factor thus

7   supports final approval. *See LinkedIn*, 309 F.R.D. at 588 (factor supported settlement approval

8   where parties had investigated claims, engaged in formal and informal discovery, briefed motions

9   to dismiss, participated in a formal mediation before a third-party neutral, and spent several

10  months negotiating); *Bellinghausen*, 306 F.R.D. at 257 (same).

11              **6.      Class counsel believes—based on their extensive experience litigating**
                **and settling consumer class actions—that the Settlement is in the best**
12              **interests of the class.**

13          The sixth *Churchill* factor—the experience and views of counsel—also weighs in favor of

14  final settlement approval. "Parties represented by competent counsel are better positioned than

15  courts to produce a settlement that fairly reflects each party's expected outcome in litigation."

16  *LinkedIn*, 309 F.R.D. at 588 (quoting *Rodriguez*, 563 F.3d at 967). "Consequently, the

17  recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Id.*

18  (internal quotations omitted). *See also Larsen*, 2014 WL 3404531 at *5 ("A district court is

19  entitled to give consideration to the opinion of competent counsel that the settlement is fair,

20  reasonable, and adequate.") (internal quotations omitted).

21          Here, Plaintiffs' counsel has extensive experience prosecuting and settling class actions,

22  especially in the consumer protection arena. (*See, generally,* dkts. 124-1, 124-2, 124-3, 124-4.)

23  Indeed, one of the firms representing Plaintiffs, Edelson PC, was acknowledged by Law360 in

24  2017 as having a "Consumer Protection Practice Group of the Year," the only plaintiff's firm to be

25  so recognized. (*See* dkt. 124-1 ¶ 3.) Furthermore, Plaintiffs' counsel has been litigating *this* case

26  for over two years. As other courts have noted, "[t]he opinions of counsel should be given

27  considerable weight both because of counsel's familiarity with this litigation and previous

28  experience with cases." *Larsen*, 2014 WL 3404531 at *5. With their experience in consumer class

actions generally, and this case specifically, Plaintiffs' counsel firmly believes that the Settlement is in the best interest of the class in light of the full relief provided and the risks of continued litigation. (*See* Balabanian Decl. ¶ 7.) This factor thus supports final approval of the Settlement. *See LinkedIn*, 309 F.R.D. at 588 ("[C]lass counsel believes the settlement is in the best interests of the class, especially in light of the potential risks and rewards of continued litigation.... Consequently, this factor favors approval of the settlement."); *Bellinghausen*, 306 F.R.D. at 257 ("Given counsel's experience in this field, his assertion that the settlement is fair, adequate, and reasonable support final approval of the settlement.").

### 7. No governmental entity opposes the Settlement.

The next *Churchill* factor looks to the presence of a governmental participant. "The participation of a government agency serves to protect the interests of the class members, particularly absentees, and approval by the agency is an important factor for the court's consideration." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). Here, officials from Orange and Contra Costa Counties entered into a settlement with 24 Hour Fitness as well, which mirrors in most respects the class settlement.[6] (Balabanian Decl. ¶ 10.) No governmental entity has raised any objection or concern regarding the Settlement, and this factor thus weighs in favor of final approval. *See LinkedIn*, 309 F.R.D. at 588-89 (finding lack of government opposition supports approval because "CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures.") (internal quotations omitted).

### 8. Class members' reaction supports final approval.

The final *Churchill* factor—the reaction of class members—likewise supports final approval of the Settlement. "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to the class members." *Bellinghausen*, 306 F.R.D. at

---

[6]      Although the Counties' settlement mirrors the settlement here in most respects, Class Counsel negotiated independently of the Counties, including the relief afforded, the claim form, the notices, and other aspects of the settlement. (Balabanian Decl. ¶ 10.)

258 (internal quotations omitted). Thus, the Court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Id.* (internal quotations omitted); *see also LinkedIn*, 309 F.R.D. at 589 ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."). Conversely, a high claims rate suggests class member support for a settlement. *See, e.g, Larsen*, 2014 WL 3404531 at *5 ("The participation rate … weighs in favor of finding that the settlement is favorable to the class members."); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ("Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of the Settlement."). Here, out of 257,547 class members, over 88,000 class members (more than 34% of the class) have submitted claim forms and declarations, while only 11 have requested to be excluded from the Settlement (two of which were filed after the exclusion deadline). (Stinehart Decl. ¶¶ 15, 17(a)-(b).) Furthermore, over 2,000 class members submitted claim forms and declarations after the deadline. (*Id.* ¶ 16(e).) This high claims rate and low number of exclusions weighs in favor of final approval. *See Cruz v. Sky Chefs, Inc.*, No. 12-cv-02705, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (finding "class members' overall view of the settlement … to be positive, on balance" where approximately 30% of the class submitted claims, and only four opted out).

And while three individuals have raised various concerns regarding the Settlement, none of them are valid objections, and they should not give this Court any pause in granting final approval to the Settlement. First, Tim Corey sent a letter to the Court asking that the Settlement be modified. (Dkt. 123.) Specifically, Mr. Corey—who currently receives a free 24 Hour Fitness membership through his health insurer—asked that the Settlement Agreement be modified so that if his insurer ever drops that benefit, he will be able to reinstate his gym membership at renewal rates obtained through the Settlement. (*Id.*) Upon learning that he would still receive the benefits of the Settlement in that situation, he withdrew his objection. (Dkt. 125.) Second, Michael Lhevan moved to intervene, asking the Court "to please hold up all disbursements of money until [an allegation by Mr. Lhevan that the Orange County District Attorney retaliated against him] is

resolved." (Dkt. 129.) That motion was denied—and is not a valid objection—because, among other reasons, Mr. Lhevan is not a class member. (Dkt. 133.) Finally, Andy Gatenby sent a letter to Plaintiffs' and Defendant's counsel complaining that the Settlement was "unfair and inadequate" because 24 Hour Fitness no longer operates gyms in Arizona where he lives. (Balabanian Decl. ¶ 11.) But Mr. Gatenby's letter was not filed with the Court as required by the Preliminary Approval Order, and he has thus waived any objection to the Settlement. (Dkt. 121 at 3) ("Settlement Class Members who wish to object to the Settlement must file a written objection with the Court…. Settlement Class Members who do not timely make their objections in this manner will be deemed to have waived all objections and shall not be heard or have the right to appeal from the Order and Judgment."). In any event, while it is unfortunate that 24 Hour Fitness no longer operates a gym in a location convenient for Mr. Gatenby, he does not allege that 24 Hour Fitness made a promise never to sell or close gyms, and the written terms of his agreement expressly contemplate gym closures. (*See* dkt. 112-1 at 69, 78) (membership agreements contemplating gym closures). *See also In re Lawrence*, 516 B.R. 59 (Bankr. E.D.N.C. 2014) (dismissing claims against defendant that sold "lifetime" memberships to golf club, when club was transferred to new owner who refused to honor memberships). Simply put, the decision by 24 Hour Fitness to sell gyms to LA Fitness in Arizona (and certain clubs in the Midwest to Genesis Health Clubs) was a business decision that had nothing to do with this lawsuit or settlement. [7] (*See* Houston Decl., at ¶¶ 11-14.) Plaintiffs note that no Settlement Class Member has objected to their requests for an award of attorneys' fees and expenses or class representative incentive awards.

Ultimately, the overwhelmingly positive reaction of the class—and thus, all eight *Churchill* factors—weigh strongly in favor of granting final approval to the Settlement.

**B.      The Settlement is Not the Product of Collusion Between the Parties.**

In addition to examining the eight *Churchill* factors, when a settlement is reached prior to adversarial class certification, courts must ensure that the settlement is not the product of

---

[7]      Furthermore, LA Fitness is not a party to this litigation, and the Settlement Agreement does not release any claims Mr. Gatenby (or any other class member) may have against LA Fitness if they believe that LA Fitness is wrongfully refusing to honor rates to which they are legally entitled.

1  collusion. *See Bluetooth*, 654 F.3d at 946-47. Here, the settlement was the product of arm's-length

2  negotiation assisted by extensive mediation before a third-party neutral. (*See* dkt. 124 at 4; *see*

3  *also* Balabanian Decl. ¶ 9.) Use of an experienced and neutral mediator "strongly suggest[s]" the

4  absence of collusion. *Vincent v. Reser*, No. 11-cv-03572, 2013 WL 621865, at *4 (N.D. Cal. Feb.

5  19, 2013). In addition, while the Ninth Circuit has identified three "signs" of a potentially

6  collusive settlement, *Bluetooth*, 654 F.3d at 947, none of those signs are present here.

7       The first *Bluetooth* sign—"when counsel receive a disproportionate distribution of the

8  settlement, or when the class receives no monetary distribution but class counsel are amply

9  rewarded," 654 F.3d at 947—is absent here. Around 49,329 class members will be refunded in full

10  under the settlement, and the estimated sum of their refund amounts exceeds $8.2 million.

11  (Declaration of Jeffrey Houston ¶ 4, attached hereto as Exhibit 3.) Factor in the prospective relief

12  of reduced renewal rates going forward and the value of the Settlement reaches conservatively into

13  the tens of millions of dollars. (*See* dkt. 124 at 5-6.) Class counsel's modest fee request of $1.5

14  million is hardly "disproportionate" to this recovery. *See Larsen*, 2014 WL 3404531, at *8 (finding

15  first *Bluetooth* factor showed no collusion where estimated class payout was more than double

16  class counsel's fee request).

17       Nor is the second *Bluetooth* factor—the existence of a "clear sailing" agreement, 654 F.3d

18  at 947—present here. A clear sailing agreement is an agreement "where the party paying the fee

19  agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls

20  beneath a negotiated ceiling." *In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit*

21  *Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) (internal quotations

22  omitted). Here, there was no clear sailing agreement as part of the Settlement Agreement or

23  otherwise, and 24 Hour Fitness at all times retained its right to challenge Plaintiff's fee petition.

24  (Balabanian Decl. ¶ 9.) That 24 Hour Fitness did not exercise that right (likely because of the

25  reasonableness of class counsel's modest request) in no way suggests collusion between the

26  parties.

27       Finally, the third *Bluetooth* factor—an agreement that the fees requested but not awarded

28  revert to the defendants rather than be added to the class fund, 654 F.3d at 947—is not applicable

here because there is no class fund. Class members submitting valid claims are not paid a *pro rata* portion of a limited fund. They are given a *full refund* no matter how many other class members submit valid claims, and no matter how much or how little this Court awards class counsel in attorneys' fees.

Consequently—and not surprisingly given the assistance of a third-party mediator in reaching it—the settlement displays none of the *Bluetooth* signs suggestive of a collusive agreement. That, in conjunction with consideration of the eight *Churchill* factors discussed above, supports granting final approval to the Settlement.

## V.    LATE CLAIMS SHOULD BE ACCEPTED

As of April 6, 2018, the claims administrator has received 2,077 late claims. (Stinehart Decl. ¶ 16(f).) Of these, 1,740 would be deemed valid, but for being late, 381 contained a deficient declaration, and 132 made no attempt to complete the declaration. Plaintiffs request that the Court hold that these claims should be treated as if timely. (*Id.*) Despite the best efforts of the Parties and claims administrator, notices can and do get lost for various reasons. The number of late claims is a small fraction of the total claims received – just 2.3% of claims were late as of April 6, 2018. Moreover, these claims were *at most* only 40 days late. Treating these claims as timely filed will not reduce the benefits available to class members who submit timely claims. Plaintiffs request that all late claims received through June 1, 2018 be treated as timely. Class Counsel will be prepared to address this issue more fully at the hearing should 24 Hour Fitness object.

## VI.    CONCLUSION

Because (1) notice of the Settlement was properly disseminated to the class, (2) the eight *Churchill* factors all support final approval of the Settlement, and (3) the Settlement was not the product of collusion between the Parties, Plaintiffs respectfully request that the Court grant final approval to the Settlement.

1  Dated: April 27, 2018                    Respectfully Submitted,

2                                           Kevin O'Shea, Mark Vitcov, Rod Morris, Michael
3                                           Losquadro, Dipti Shah, and Russell Marchewka on
                                            behalf of themselves and the Settlement Class

4                                           /s/      Rafey S. Balabanian
5                                           Rafey S. Balabanian (SBN - 315962)
                                            rbalabanian@edelson.com
6                                           Eve-Lynn Rapp (admitted *pro hac vice*)
                                            erapp@edelson.com
7                                           EDELSON PC
                                            123 Townsend Street, Suite 100
8                                           San Francisco, California 94107
                                            Tel: 415.212.9300
9                                           Fax: 415.373.9435

10                                          Douglas Thompson, Jr. (admitted *pro hac vice*)
                                            dthompson@finkelsteinthompson.com
11                                          FINKELSTEIN THOMPSON LLP
                                            James Place
12                                          1077 30th Street, N.W., Suite 150
                                            Washington, DC 20007
13                                          Tel: 202.337.8000
                                            Fax: 202.337.8090
14
                                            Gordon M. Fauth, Jr. (SBN 190280)
15                                          gfauth@finkelsteinthompson.com
                                            Of Counsel to
16                                          FINKELSTEIN THOMPSON LLP
                                            100 Pine Street, Suite 1250
17                                          San Francisco, CA 94111
                                            Tel: 415.398.8700
18                                          Fax: 415.398.8704

19                                          Timothy N. Mathews (*pro hac vice* pending)
                                            tnm@chimicles.com
20                                          CHIMICLES & TIKELLIS LLP
                                            One Haverford Centre
21                                          361 West Lancaster Avenue
                                            Haverford, Pennsylvania 19041
22                                          Tel: 610.642.8500
                                            Fax: 610.649.3633
23
                                            Kristen L. Sagafi (SBN- 222249)
24                                          ksagafi@tzlegal.com
                                            TYCKO & ZAVAREEI LLP
25                                          483 Ninth Street – Suite 200
                                            Oakland, CA 94607
26                                          Tel: (510) 254-6810

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2     I, Rafey S. Balabanian, an attorney, certify that on April 27, 2018, I served the above and

3  foregoing *Plaintiffs' Motion for Final Approval of Class Action Settlement Agreement* by

4  causing true and accurate copies of such paper to be filed and transmitted to all counsel of record

5  via the Court's CM/ECF electronic filing system.

6

7                                                    /s/      Rafey S. Balabanian

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28